UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

| | |
|---|---|
| KATY M. LAPORTA, § § Plaintiff, § § v. § § COMMISSIONER OF SOCIAL SECURITY, § § Defendant. § | Case # 1:19-cv-237-DB MEMORANDUM DECISION AND ORDER |

## INTRODUCTION

Plaintiff Katy M. LaPorta ("Plaintiff") brings this action pursuant to the Social Security Act (the "Act"), seeking review of the final decision of the Commissioner of Social Security (the "Commissioner"), that denied her application for Disability Insurance Benefits ("DIB") under Title II of the Act, and her application for supplemental security income ("SSI") under Title XVI of the Act. *See* ECF No. 1. The Court has jurisdiction over this action under 42 U.S.C. §§ 405(g), 1383(c), and the parties consented to proceed before the undersigned in accordance with a standing order (*see* ECF No. 18).

Both parties moved for judgment on the pleadings pursuant to Federal Rule of Civil Procedure 12(c). *See* ECF Nos. 10, 16. Plaintiff also filed a reply brief. *See* ECF No. 17. For the reasons set forth below, Plaintiff's motion for judgment on the pleadings (ECF No. 10) is **DENIED**, and the Commissioner's motion for judgment on the pleadings (ECF No. 16) is **GRANTED**.

## BACKGROUND

Plaintiff protectively filed her applications for DIB and SSI on January 30, 2012, alleging disability beginning January 30, 2012 (the disability onset date), due to: migraines, nerve damage in her shoulder, short-term memory loss, noise sensitivity, inability to lift, and temporomandibular

joint ("TMJ") disorder. Transcript ("Tr.") 11, 208, 215, 276. The claims were denied initially on March 4, 2012, after which Plaintiff filed a written request for a hearing. 120-21, 1074-99. A hearing was held before Administrative Law Judge ("ALJ") Nancy Pasiecznik on April 2, 2013, at which Plaintiff and her attorney appeared. Tr. 72-113. A second hearing was held before ALJ Donald T. McDougall on October 3, 2014, at which Plaintiff, her attorney, and a vocational expert ("VE") also appeared. Tr. 26-71.

On January 28, 2015, ALJ McDougall issued a decision finding Plaintiff not disabled, and the Appeals Council denied Plaintiff's Request for Review. Tr. 1-4, 11-19. Thereafter, Plaintiff filed a civil action in the United States District Court for the Western District of New York, and the Court remanded the case to the Commissioner for further proceedings pursuant to sentence four of section 205(g) of the Social Security Act. Tr. 1102-117. An additional hearing was held before ALJ William Weir (the "ALJ") on May 14, 2018 in Buffalo, New York. Tr. 951-52. Plaintiff appeared and testified at the hearing, and was represented by Kelly Laga-Sciandra, an attorney. medical expert Debra Ann Pollack, M.D. ("Dr. Pollack"), and VE Michael A. Klein, also appeared and testified at the hearing, each via telephone. *Id*.

On November 5, 2018, the ALJ issued a new decision denying Plaintiff's applications. Tr. 951-68, 982-1051. Plaintiff did not file exceptions to the ALJ's decision, and the Appeals Council declined review. The ALJ's November 5, 2018 decision thus became the "final decision" of the Commissioner subject to judicial review under 42 U.S.C. § 405(g).

## LEGAL STANDARD

### I. District Court Review

"In reviewing a final decision of the SSA, this Court is limited to determining whether the SSA's conclusions were supported by substantial evidence in the record and were based on a correct legal standard." *Talavera v. Astrue*, 697 F.3d 145, 151 (2d Cir. 2012) (citing 42 U.S.C. §

2

405(g)) (other citation omitted). The Act holds that the Commissioner's decision is "conclusive" if it is supported by substantial evidence. 42 U.S.C. § 405(g). "Substantial evidence means more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Moran v. Astrue*, 569 F.3d 108, 112 (2d Cir. 2009) (citations omitted). It is not the Court's function to "determine *de novo* whether [the claimant] is disabled." *Schaal v. Apfel*, 134 F. 3d 496, 501 (2d Cir. 1990).

## II.  The Sequential Evaluation Process

An ALJ must follow a five-step sequential evaluation to determine whether a claimant is disabled within the meaning of the Act. *See Parker v. City of New York*, 476 U.S. 467, 470-71 (1986). At step one, the ALJ must determine whether the claimant is engaged in substantial gainful work activity. *See* 20 C.F.R. § 404.1520(b). If so, the claimant is not disabled. If not, the ALJ proceeds to step two and determines whether the claimant has an impairment, or combination of impairments, that is "severe" within the meaning of the Act, meaning that it imposes significant restrictions on the claimant's ability to perform basic work activities. *Id*. § 404.1520(c). If the claimant does not have a severe impairment or combination of impairments meeting the durational requirements, the analysis concludes with a finding of "not disabled." If the claimant does, the ALJ continues to step three.

At step three, the ALJ examines whether a claimant's impairment meets or medically equals the criteria of a listed impairment in Appendix 1 of Subpart P of Regulation No. 4 (the "Listings"). *Id*. § 404.1520(d). If the impairment meets or medically equals the criteria of a Listing and meets the durational requirement, the claimant is disabled. *Id*. § 404.1509. If not, the ALJ determines the claimant's residual functional capacity, which is the ability to perform physical or mental work activities on a sustained basis notwithstanding limitations for the collective impairments. *See id*. § 404.1520(e)-(f).

The ALJ then proceeds to step four and determines whether the claimant's RFC permits him or her to perform the requirements of his or her past relevant work. 20 C.F.R. § 404.1520(f). If the claimant can perform such requirements, then he or she is not disabled. *Id*. If he or she cannot, the analysis proceeds to the fifth and final step, wherein the burden shifts to the Commissioner to show that the claimant is not disabled. *Id*. § 404.1520(g). To do so, the Commissioner must present evidence to demonstrate that the claimant "retains a residual functional capacity to perform alternative substantial gainful work which exists in the national economy" in light of his or her age, education, and work experience. *See Rosa v. Callahan*, 168 F.3d 72, 77 (2d Cir. 1999) (quotation marks omitted); *see also* 20 C.F.R. § 404.1560(c).

## ADMINISTRATIVE LAW JUDGE'S FINDINGS

The ALJ analyzed Plaintiff's claim for benefits under the process described above and made the following findings in his November 5, 2018 decision:

1. The claimant meets the insured status requirements of the Social Security Act through June 30, 2021;[1]

2. The claimant has not engaged in substantial gainful activity since January 30, 2012, the alleged onset date (20 CFR 404.1571 *et seq*., and 416.971 *et seq*.);

3. The claimant has cervical degenerative disc disease, Chiari malformation, migraine headaches, a depressive disorder, and an anxiety disorder, each of which constitutes a severe impairment (20 CFR 404.1520(c) and 416.920(c));

4. The claimant does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525, 404.1526, 416.920(d), 416.925 and 416.926);

5. The claimant has the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) and 416.967(b)[2] because she is able to lift and/or carry twenty pounds

---

[1] As the ALJ explained, Plaintiff's posted earnings show steady work activity after the alleged disability onset date of January 30, 2012, but this work activity did not rise to the level of substantial gainful activity. Tr. 954-55.

[2] "Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg

4

     occasionally and ten pounds frequently, stand and/or walk for six hours in an eight-hour workday, and sit for six hours in an eight-hour workday. The claimant is able to occasionally bend, stoop, kneel, crouch, and crawl, but she is unable to tolerate exposure to concentrated toxic or noxious fumes or gases or extreme hot or cold temperatures. The claimant is unable to drive at night. The claimant is able to engage in simple, repetitive, one or two-step tasks, but she must not engage in complex work, defined as involving multiple simultaneous goals or objectives, or the need to independently set quantity, quality, or methods standards. The claimant is able to tolerate one change per day in general tasks or work setting. The claimant should have no public contact, but she is able to have occasional co-worker and supervisory contact;

6. The claimant is unable to perform any past relevant work (20 CFR 404.1565 and 416.965);

7. The claimant was born on August 25, 1981 and she was 30 years old, which is defined as a younger individual, age 18-49, on January 30, 2012, the alleged disability onset date (20CFR 404.1563 and 416.963);

8. The claimant has at least a high school education and is able to communicate in English (20 CFR 404.1564 and 416.964);

9. Transferability of job skills is not material to the determination of disability because using the Medical-Vocational Rules as a framework supports a finding that the claimant is "not disabled," whether or not the claimant has transferable job skills (See SSR 82-41 and 20 CFR Part 404, Subpart P, Appendix 2);

10. Considering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform (20 CFR 404.1569, 404.1569a, 416.969, and 416.969a);

11. The claimant has not been under a disability, as defined in the Social Security Act, from January 30, 2012, through the date of this decision (20 CFR 404.1520(g) and 416.920(g)).

Tr. 951-68.

     Accordingly, the ALJ determined that, based on the application for a period of disability and disability insurance benefits protectively filed on January 30, 2012, the claimant is not disabled under sections 216(i) and 223(d) of the Social Security Act. Tr. 968. The ALJ also determined that

---

controls. To be considered capable of performing a full or wide range of light work, [the claimant] must have the ability to do substantially all of these activities. If someone can do light work, [the SSA] determine[s] that he or she can also do sedentary work, unless there are additional limiting factors such as loss of fine dexterity or inability to sit for long periods of time." 20 C.F.R. § 404.1567(b).

5

based on the application for supplemental security benefits protectively filed on January 30, 2012, the claimant is not disabled under section 1614(a)(3)(A) of the Act. *Id*.

## ANALYSIS

Plaintiff asserts three points of error: (1) the ALJ failed to apply the proper standard when considering her potential absenteeism due to treatment; (2) the ALJ erred by assigning minimal weight to a 2015 treating source statement from Plaintiff's neurologist; and (3) the ALJ's evaluation of Plaintiff's subjective complaints was not supported by substantial evidence. *See* ECF No. 10-1 at 23-34. The Commissioner responds that: (1) substantial evidence supports the ALJ's conclusion regarding Plaintiff's potential absenteeism; (2) the ALJ properly evaluated the opinion evidence from Plaintiff's treating neurologist; and (3) the ALJ properly considered Plaintiff's subjective complaints. *See* ECF No. 16-1 at 5-15.

A Commissioner's determination that a claimant is not disabled will be set aside when the factual findings are not supported by "substantial evidence." 42 U.S.C. § 405(g); *see also Shaw v. Chater*, 221 F.3d 126, 131 (2d Cir. 2000). Substantial evidence has been interpreted to mean "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id*. The Court may also set aside the Commissioner's decision when it is based upon legal error. *Rosa*, 168 F.3d at 77.

**I.   The ALJ Properly Evaluated The Opinion Evidence From Dr. Kang.**

Plaintiff's first and second points of error concerns the ALJ's consideration of the opinions of her treating neurologist, Minsoo Kang, M.D. ("Dr. Kang"), regarding Plaintiff's potential absenteeism due to headaches. On April 17, 2015, Dr. Kang completed a Headaches RFC Questionnaire in which he opined that Plaintiff had between one and three headaches a week; she had associated symptoms of nausea, visual disturbances, insomnia, and inability to concentrate; her headaches were triggered by bright lights, lack of sleep, noise, and stress; she would need to

6

take unscheduled breaks lasting from one to eight hours to lie down due to her headaches; she could not tolerate any work stress during her migraine flare ups; and she would likely be absent from work four times a month as a result of her impairment and treatment. Tr. 1515-18. Dr. Kang also opined that Plaintiff would be unable to perform any job functions during a migraine flare-up and that she did not know if Plaintiff was capable of full-time competitive employment. Tr. 1518. In April 2018, Dr. Kang completed a Medical Statement Regarding Headaches for Social Security Disability Claims in which he opined, *inter alia*, that Plaintiff had daily headaches and that she would be able to "continue working typically during a headache exacerbation when properly treated with prescribed medication." Tr. 3424-26.

As noted above, Dr. Kang was Plaintiff's treating neurologist. The opinions of Plaintiff's treating physicians should be given "controlling weight" if they are "well-supported by medically acceptable clinical and laboratory diagnostic techniques and [are] not inconsistent with the other substantial evidence in [the] case record." 20 C.F.R. §§ 404.1527(c)(2). However, a treating physician's opinion is not afforded controlling weight when the opinion is inconsistent with other substantial evidence in the record, such as the opinions of other medical experts. 20 C.F.R. § 404.1527(d)(2), 416.927(c)(2); *Snell v. Apfel*, 177 F.3d 128, 133 (2d Cir. 1999). If the ALJ gives the treating physician's opinion less than controlling weight, he must provide good reasons for doing so. *Clark v. Comm'r of Soc. Sec.*, 143 F.3d 115, 118 (2d Cir. 1998).[3]

If not afforded controlling weight, a treating physician's opinion is given weight according to a non-exhaustive list of enumerated factors, including (i) the frequency of examinations and the length, nature, and extent of the treatment relationship; (ii) the evidence in support of the

---

[3] The Court notes a recent change to the Administration's regulations regarding the consideration of opinion evidence will eliminate application of this "treating physician rule" for claims filed on or after March 27, 2017. *See* Revisions to Rules Regarding the Evaluation of Medical Evidence, 82 Fed. Reg. 5844, 5848-49 (Jan. 18, 2017) (to be codified at 20 C.F.R. pts. 404 and 416). For the purposes of this case, however, the prior version of the regulation applies. *See Smith v. Colvin*, No. 16-CV-6150L, 2018 WL 1210891, at *2 (W.D.N.Y. Mar. 8, 2018).

physician's opinion; (iii) the opinion's consistency with the record as a whole; and (iv) whether the physician has a relevant specialty. 20 C.F.R. §§ 404.1527(c) (2), 416.927(c)(2); *see Clark*, 143 F.3d at 118; *Marquez v. Colvin*, No. 12 CIV. 6819 PKC, 2013 WL 5568718, at *9 (S.D.N.Y. Oct. 9, 2013). In rejecting a treating physician's opinion, an ALJ need not expressly enumerate each factor considered if the ALJ's reasoning and adherence to the treating physician rule is clear. *See, e.g., Atwater v. Astrue*, 512 F. App'x 67, 70 (2d Cir. 2013).

In this case, the ALJ properly evaluated Dr. Kang's opinions in accordance with the regulations and explained his reasons for the weights assigned. Tr. 965-66. *See* 20 C.F.R. §§ 404.1527(c)(2), 416.927(c)(2). The ALJ assigned minimal weight to Dr. Kang's April 2015 and "very significant weight" to Dr. Kang's April 2018 opinion. Tr. 965-96. The ALJ afforded the 2018 opinion significant weight because Dr. Kang was a treating source; because of his specialty in neurology; and because the ALJ found that the opinion was consistent with the longitudinal evidence in the record. Tr. 965. As the ALJ explained, the 2015 opinion did not contain a function-by-function assessment of Plaintiff's ability to perform work related activities. Tr. 966. The ALJ also found that the 2015 was unsupported and was contradicted by Dr. Kang's 2018 opinion. *Id*. Specifically, the ALJ noted that, in 2015, Dr. Kang opined that Plaintiff could not tolerate work stress during a headache and did not know if Plaintiff would be able to sustain full-time work; however, in 2018, he opined that Plaintiff could continue to work through her daily headaches if she took her medication. Tr. 966.

Plaintiff asserts that there is no discrepancy between the 2015 and 2018 opinions because, the 2015 opinion is more detailed. *See* ECF No. 10-1 at 27-28. However, the opinions speak for themselves. In 2015, Dr. Kang stated he was unsure whether Plaintiff could engage in fulltime employment and that she could not work when experiencing a headache. Tr. 1515-18. In 2018, Dr. Kang opined that Plaintiff could continue to work despite her headaches so long as she took her

medication. Tr. 3425. These statements directly contradict each other. Supportability and consistency are valid factors in deciding the weight accorded to any medical opinion. *See Michels v. Astrue*, 297 F.App'x 74, 76 (2d Cir. Oct. 30, 2008).

Plaintiff also argues that the ALJ applied the wrong standard because he admitted on the record that he believed absences for treatment were irrelevant. *See* ECF No. 10-1 at 24. However, the ALJ did not find that absenteeism or "treatment limitations" were irrelevant to the disability evaluation, as Plaintiff claims. *Id*. Rather, consistent with the regulations, the ALJ found that Dr. Kang's opinion that Plaintiff would likely be absent four times a month was unsupported by "clinical finings, detailed explanation, or specific references to treatment notes." Tr. 966. Upon review of the record, the Court finds that substantial evidence supports the ALJ's conclusion, as Dr. Kang did not provide any evidence or explanation in support of his opinion that Plaintiff would likely miss four days of work a month. Tr. 1518.

While the ALJ's statement at the administrative hearing may have been a misstatement of the law in this Circuit with respect to the "relevance" of any particular piece of evidence, when discussing the opinion evidence from Dr. Kang in the hearing decision, the ALJ applied the proper legal standards, and therefore, any error is at most harmless. *See, e.g., Duvergel v. Apfel*, No. 99 CIV. 4614 (AJP), 2000 WL 328593, at *11 n.29 (S.D.N.Y. Mar. 29, 2000) (harmless error where remand would not change the result of the ALJ's decision) citing *Hughes v. Chater*, 895 F.Supp. 985, 995 (N.D.Ill.1995) ("If it is plain that the overlooked evidence could not have altered the result, the factfinder's error in failing to consider it would of course be harmless, and a remand would be pointless.").

Furthermore, although Plaintiff argues that Dr. Kang provided a function-by-function assessment of Plaintiff's ability to perform work related activities and identified limitations in Plaintiff's ability to sit, stand, walk, lift, bend, stoop, and crouch (*see* ECF No. 10-1 at 27), Plaintiff

9

misstates the evidence. Tr. 1518. In response to the section of the form asking the doctor to describe any other limitations that would affect Plaintiff's ability to work at a regular job on a sustained basis, Dr. Kang simply stated: "all of the above and all job functions." Tr. 1518. Thus, Dr. Kang did not provide a function-by-function assessment of Plaintiff's ability to perform perform work related activities. nor does he describe Plaintiff's physical or mental restrictions. *See* 20 C.F.R. § 404.1527(c)(3) ("The more a medical source presents relevant evidence to support a medical opinion. . . the more weight we will give that medical opinion. The better an explanation a source provides for a medical opinion, the more weight we will give that medical opinion.").

As noted above, Dr. Kang provided no explanation or evidentiary support for his opinion that Plaintiff would miss four days of work a month. Tr. 1518. Plaintiff suggests that her chiropractic appointments and injections support this opinion *See* ECF No. 10-1 at 24-25. This argument is unavailing. First, Dr. Kang does not list chiropractic treatment as one of Plaintiff's treatment modalities. Tr. 1517 (listing Plaintiff's treatment as: "follow up appointments, medication, trigger points, nerve blocks, and Botox therapy"). Thus, Plaintiff's course of chiropractic treatment does not necessarily support Dr. Kang's opinion. Second, with respect to her injection therapy, by Plaintiff's own count she had injection therapy approximately 53 times during the relevant period—a period of 82 months. *See* ECF No. 10-1 at 24-25. This averages out to less than one injection treatment per month, and, therefore, the Court finds that this evidence also fails to support Dr. Kang's opinion that Plaintiff would likely miss four days of work per month.

Plaintiff also claims that her "prescribed medication," such as IV infusion therapy, trigger shots, massage therapy, nerve block, and Botox would require in-office treatment. *See* ECF No. 10-1 at 28. However, Plaintiff's argument is not supported by the record. In October 2017, Dr. Kang prescribed Treximet for breakthrough migraines. Tr. 3102. Plaintiff argues that Dr. Kang's

2015 opinion that bright lights exacerbate her headaches remains uncontested and is work preclusive. *See* ECF No. 10-1 at 30. However, this argument lacks merit. As explained above, Dr. Kang's 2018 opinion states that Plaintiff is able to work through her headaches when she takes her medication. Tr. 3425. In sum, the ALJ made no error in his evaluation of the opinions from Dr. Kang, and Plaintiff's first and second points of error are overruled.

## II.     The ALJ Properly Evaluated Plaintiff's Subjective Complaints.

Plaintiff next argues that the ALJ erred in evaluating her subjective complaints. *See* ECF No. 10-1 at 30-34. However, the ALJ correctly determined that the medical evidence as a whole did not corroborate Plaintiff's subjective complaints to the extent she alleged. Tr. 960-61. The ALJ decides the issue of the consistency of Plaintiff's subjective statements and "is not require[d] to accept the claimant's subjective complaints without question." *Genier v. Astrue*, 606 F.3d 46, 49 (2d Cir. 2010).

First, the ALJ found that Plaintiff's treatment had been conservative in nature, including medication management, activity modification, home exercise, physical therapy, nerve blocks, trigger point injections, and Botox injections. Tr. 961-62. Significantly, the ALJ noted that Plaintiff's conservative treatment had been successful in controlling her symptoms during the relevant period. Tr. 961-62. If the frequency or extent of the treatment sought by an individual is not comparable with the degree of the individual's subjective complaints, the ALJ may find that the alleged intensity and persistence of an individual's symptoms are inconsistent with the overall evidence in the record. *See* SSR 16-3p, 2017 WL 5180304 *9; *Netter v. Astrue*, 272 F. App'x 54, 56 (2d Cir. 2008) (holding that it is proper for an ALJ to cite a claimant's conservative treatment history to support his conclusion that he or she is not disabled); *Shaffer v. Colvin*, No. 1:14-CV-00745 (MAT), 2015 WL 9307349, at *5 (W.D.N.Y. Dec. 21, 2015) (holding that the ALJ properly discredited the plaintiff's claims of a disabling condition noting that her treatment was essentially

11

routine and conservative, consisting of medication management and physical therapy.); *see also Mayor v. Colvin*, No. 15 CIV. 0344 (AJP), 2015 WL 9166119, at *22 n. 29 (S.D.N.Y. Dec. 17, 2015) ("Courts in this Circuit routinely uphold credibility determinations in which the ALJ finds a claimant's statements about their symptoms not credible based, inter alia, on a conservative treatment record").

Citing a decision from a Connecticut district court, Plaintiff asserts that physical therapy, injections, and medication should not be considered conservative treatment. *See* ECF No. 10-1 at 31 (citing *Jazina v.Berryhill*, No. 3:16-CV-01470 (JAM), 2017 WL 6453400 (D. Conn. Dec. 13, 2017)). However, the ALJ did not err by referring to Plaintiff's treatment as "conservative" where the record supports such a characterization. *See McLymond v. Berryhill*, No. 16-CV-6180 CJS, 2018 WL 1367335, at *10 (W.D.N.Y. Mar. 16, 2018) (citing *Knorr v. Colvin*, No. 6:15-CV-06702(MAT), 2016 WL 4746252, at *14 (W.D.N.Y. Sept. 13, 2016) (Characterizing "physical therapy, a TENS unit, NSAIDs, opioid analgesics, muscle relaxants, anti-convulsant medications, palliative injections, [and] chiropractic adjustments" as "conservative treatments.")).

Furthermore, many courts in this district, including this Court, have defined chiropractic treatment, physical therapy, and injections as "conservative treatment." *See, e.g.*, *Wilson v. Colvin*, No. 6:16-CV-06509-MAT, 2017 WL 2821560, at *6 (W.D.N.Y. June 30, 2017) ("It was within the ALJ's discretion to conclude that Plaintiff's allegations of debilitating pain were undermined by her failure to follow up on the multiple—relatively conservative—treatment options offered to her such as chiropractic treatment, physical therapy, and epidural injections."); *Green v. Colvin*, No. 12-CV-6387T, 2013 WL 4094765, at *3 (W.D.N.Y. Aug. 13, 2013) (noting that Plaintiff explored different methods of "conservative treatment", such as chiropractic adjustments, to relieve his back pain); *Pasquariello v. Comm'r of Soc. Sec.*, No. 1:18-CV-681-DB, 2019 WL 4257407, at *5 (W.D.N.Y. Sept. 9, 2019) (noting that Plaintiff's symptoms were consistently

managed with "conservative treatment" such as medication, trigger point injections, epidural steroid injections, chiropractic care, acupuncture, home exercise, and physical therapy); *Taylor v. Comm'r of Soc. Sec.*, No. 6:14-CV-0814, 2015 WL 4649820, at *8 (N.D.N.Y. Aug. 5, 2015) (noting that the plaintiff responded well to "conservative chiropractic treatment"). Accordingly, Plaintiff's reliance on *Jazina* is unpersuasive, and her argument on this point fails.

The ALJ also noted gaps in Plaintiff's treatment history. Tr. 961, 469, 505. A claimant's allegations of disability are undermined by a failure to seek regular treatment for the allegedly disabling conditions. *See Naval v. Astrue*, 303 F.App'x 18, 20 (2d Cir. Dec. 16, 2008) (citing *Arnone v. Bowen*, 882 F.2d 34, 39 (2d Cir. 1989)).

Finally, the ALJ found that Plaintiff's subjective complaints were not consistent with many of the medical opinions of record. Tr. 961, 965. An ALJ has discretion to evaluate the credibility of a claimant and to make an independent judgment based on medical findings regarding the true extent of the claimant's symptoms. *Mimms v. Heckler*, 750 F.2d 180, 186 (2d Cir.1984); *Dumas v. Schweiker*, 712 F.2d 1545, 1553 (2d Cir.1983). It is the function of the Commissioner, not the reviewing court, to "resolve evidentiary conflicts and to appraise the credibility of witnesses, including the claimant." *Caroll v. Sec'y of Health and Human Serv.*, 705 F.2d 638, 642 (2d Cir.1983); *see Gernavage*, 882 F. Supp. at 1419 n. 6 (An ALJ's determination with respect to the credibility of witnesses is given great deference because the ALJ heard the testimony and observed the demeanor of the witnesses).

Furthermore, Plaintiff must produce appropriate, probative evidence in support of any subjective statements of symptoms, 20 C.F.R. §§ 404.1529(c)(4), 416.929(c)(4), and the ALJ's decision to discount Plaintiff's statements of symptoms must be accepted by a reviewing court unless it is clearly erroneous. *Centano v. Apfel*, 73 F.Supp.2d 333, 338 (S.D.N.Y.1999). "An ALJ's evaluation of Plaintiff's credibility is entitled to great deference if it is supported by substantial

evidence." *Nelson v. Astrue*, No. 5:09–CV–00909, 2010 WL 3522304, at *6 (N.D.N.Y. Aug.12 2010).

As discussed above, the ALJ assigned "very significant weight" to Dr. Kang's opinion that Plaintiff could continue to work through her daily headaches if she took her prescribed medication. Tr. 965. The ALJ also assigned great weight to the opinions of medical expert Debra Ann Pollack, M.D. ("Dr. Pollack"),[4] very significant weight to the opinions of consultative psychiatric examiners Janine Ippolito, Psy.D. ("Dr. Ippilito"), and Susan Santarpia, Ph.D. ("Dr. Santarpia"); very significant weight to the opinion by state agency mental health consultant S. Juriga, Ph.D. {"Dr. Jurgia"); and significant weight to the opinions of consultative examiners Donna Miller, D.O. ("Dr. Miller"), and Rita Figueroa, M.D. ("Dr. Figueroa"). Tr. 965, 425-429, 995-1007, Tr. 1726-30, 1586-90, 3477-80

Dr. Pollack opined that Plaintiff could perform light work with occasional postural activities, except she could never climb ladder ropes, or scaffold she should not work around unprotected heights, she could tolerate occasional exposure to environmental irritants such as fumes and temperature extremes, shew would have mild to moderate limitations in concentration, persistence, and pace, and she could follow one- and two-step instructions in a low social contact work setting. Tr. 999-1000. Dr. Miller opined that Plaintiff had moderate limitations with repetitive pushing, lifting, and carrying. Tr. 428. Dr. Figueroa opined Plaintiff should avoid high level noise environments and that she had mild limitations in repetitive bending, lifting, and carrying. Tr. 1730.

With regard to her mental functioning, Dr. Ippilito opined that Plaintiff could follow and understand simple instructions and tasks, learn new tasks, and make appropriate decisions with no

---

[4] As noted above, Dr. Pollack, a neurologist, appeared and testified as a medical expert at Plaintiff's hearing. Tr. 995-1007.

limitations; maintain attention and concentration and maintain a regular schedule with mild limitations; relate adequately to others with moderate limitations; and deal with stress with marked limitations. Tr. 1589. Dr. Santarpia opined that Plaintiff could understand, remember, and apply simple and complex directions; use reason and judgment to make work related decisions; sustain concentration and perform at a task at a consistent pace; sustain an ordinary work routine; and had mild to moderate limitations in interacting with others and regulating her emotions, controlling her behaviors, and maintaining well-being. Tr. 3477, 3479-81. Dr. Jurgia opined that Plaintiff could function in a low stress, low contact environment, performing simple tasks. Tr. 1083.

Based on the foregoing, the Court finds that the ALJ properly exercised his discretion and found that Plaintiff's allegations regarding her functional limitations were not entirely consistent with the medical evidence of record. While Plaintiff may disagree with the ALJ's conclusion, the Court must "defer to the Commissioner's resolution of conflicting evidence" and reject the ALJ's findings "only if a reasonable factfinder would have to conclude otherwise." *Morris v. Berryhill*, No. 16-02672, 2018 WL 459678, at *3 (2d Cir. Jan. 18, 2018) (internal citations and quotations omitted); *Krull v. Colvin*, 669 F. App'x 31 (2d Cir. 2016) (the deferential standard of review prevents a court from reweighing evidence); *Bonet ex rel. T.B. v. Colvin*, 523 F. App'x 58, 59 (2d Cir. 2013) (summary order) ("Under this very deferential standard of review, once an ALJ finds facts, we can reject those facts only if a reasonable factfinder would have to conclude otherwise."). Further, it is the ALJ's duty to evaluate conflicts in the evidence. *See* 20 C.F.R. § 404.1527(c)(i); *Brault v. Soc. Sec. Admin. Comm'r*, 683 F.3d 443, 448 (2d Cir. 2012) ("Once the ALJ finds facts, [the Court] can reject those facts only if a reasonable factfinder would have to conclude otherwise"); *Monroe v. Comm'r of Soc. Sec.*, 676 F. App'x 5, 7 (2d Cir. 2017) ("Genuine conflicts in the medical evidence are for the Commissioner to resolve.") (quoting *Veino v. Barnhart*, 312 F.3d 578, 588 (2d Cir. 2002)).

For all the reasons explained above, the Court finds that the ALJ appropriately considered the evidence of record, including the clinical findings and the medical opinions, and the ALJ's determination was supported by substantial evidence. Accordingly, the Court finds no error.

## **CONCLUSION**

Plaintiff's Motion for Judgment on the Pleadings (ECF No. 10) is **DENIED**, and the Commissioner's Motion for Judgment on the Pleadings (ECF No. 16) is **GRANTED**. Plaintiff's Complaint (ECF No. 1) is **DISMISSED WITH PREJUDICE**. The Clerk of Court will enter judgment and close this case.

**IT IS SO ORDERED**.

_____
DON D. BUSH
UNITED STATES MAGISTRATE JUDGE